[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-14601
Non-Argument Calendar

_____

D.C. Docket No. 9:14-cr-80114-DTKH-4


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BENOIT PLACIDE,
a.k.a. Snow,
a.k.a. Mario,

Defendant-Appellant.


_____

No. 16-10223
Non-Argument Calendar

_____

D.C. Docket No.  9:14-cr-80114-DTKH-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LUKNER BLANC,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(April 27, 2017)

Before TJOFLAT, WILLIAM PRYOR, and EDMONDSON, Circuit Judges.

PER CURIAM:

In this consolidated appeal, co-conspirators Benoit Placide and Lukner Blanc appeal their convictions for conspiracy to steal government funds, wire fraud, aggravated identity theft, and (only for Blanc) for stealing government funds. Briefly stated, Defendants were involved in a conspiracy which sought to file fraudulent tax returns using stolen identities. No reversible error has been shown; we affirm.

I.

Placide and Blanc both contend that the district court abused its discretion in rejecting their guilty pleas. We review for abuse of discretion a district court's decision to reject a guilty plea.[1] United States v. Gomez-Gomez, 822 F.2d 1008, 1010 (11th Cir. 1987).

About the district court's refusal to accept Placide's guilty plea, we see no abuse of discretion. At the plea hearing, Placide sought to enter an Alford plea, whereby Placide would plead guilty but still maintain his innocence. A district court is authorized to accept a guilty plea despite the defendant's protestations of innocence as long as a strong factual basis exists for the plea. North Carolina v. Alford, 91 S. Ct. 160, 167-68 (1970). Criminal defendants, however, have no absolute right to have a constitutionally valid guilty plea accepted: a court may instead exercise its discretion in rejecting a plea. Santobello v. New York, 92 S. Ct. 495, 498 (1971); Alford, 91 S. Ct. at 168 n.11.

At the plea hearing, Placide testified that he "lost" his debit card and that he was unaware that the purpose of the conspiracy was to obtain stolen funds. Placide also denied that he helped to file false tax returns, that he allowed intentionally his

---

[1] Because Placide's and Blanc's challenges to the district court's rejection of their guilty pleas fail under the abuse-of-discretion standard, we do not reach the government's contention that this issue should be reviewed only for plain error.

3

co-conspirators to deposit stolen money into his bank account, and that he knew the money in his account was stolen. In the light of Placide's testimony -- and the severity of the charges Placide faced -- the district court was not sufficiently satisfied that Placide had in fact admitted guilt to the charged offenses. We have said that "when a defendant casts doubts upon the validity of his guilty plea by protesting his innocence or by making exculpatory statements, the court may resolve such doubts against the plea." Gomez-Gomez, 822 F.2d at 1011. Given Placide's refusal to admit to the conduct underlying his criminal charges, the district court acted within its discretion by refusing to accept Placide's guilty plea. See id. "It is far better for a court to err on the side of rejecting a valid guilty plea than to violate a defendant's constitutional rights by entering judgment on a defective plea." Id.

The district court also abused no discretion in rejecting Blanc's guilty plea. At the plea hearing, Blanc said he wished to plead guilty to the charged offenses. But Blanc refused to admit the facts set forth in the government's proffer. Upon further discussion, Blanc admitted that some of the government's proffer was accurate, but denied flatly that he had committed the conduct underlying three of the charges against him. Because Blanc's testimony cast serious doubt upon the validity of his guilty plea, the district court acted within its discretion in refusing to accept the plea. See id.

II.

Blanc next challenges the district court's denial of his motion to sever (pursuant to Fed. R. Crim. P. 14) his trial from that of Placide. Blanc contends that severance was warranted because he and Placide had antagonistic, mutually exclusive defenses.

We review for abuse of discretion a district court's denial of a motion to sever. United States v. Browne, 505 F.3d 1229, 1268 (11th Cir. 2007).

To demonstrate that severance was warranted, Blanc bears the "heavy burden" of demonstrating both (1) that he was prejudiced by the joint trial and (2) that severance was the only proper way to remedy that prejudice. See id. That two defendants present mutually antagonistic defenses does not, by itself, render the joint trial prejudicial per se. Zafiro v. United States, 113 S. Ct. 933, 938 (1993). Furthermore, even where some prejudice can be shown, nothing in Rule 14 mandates severance. Instead, the district court has discretion to grant an appropriate remedy. Id. Accordingly, the Supreme Court has said that severance under Rule 14 should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id.

5

As a general rule, defendants who are indicted together -- as Blanc and Placide were in this case -- are also tried together, particularly in conspiracy cases. See Browne, 505 F.3d at 1268.  Blanc argues, however, that his trial should have been severed from that of Placide because he and Placide presented mutually exclusive defenses.  In particular, Placide's theory of the case was that Blanc had "duped" Placide into participating in the conspiracy, that Placide was therefore innocent of the charged offenses, and that Blanc was guilty as the mastermind behind the conspiracy.

We rejected a similar argument in United States v. Blankenship, 382 F.3d 1110 (11th Cir. 2004), in which one defendant's defense was that he was an innocent victim of the other two defendants' manipulative schemes.  There, we first concluded that the defendants seeking severance had failed to demonstrate prejudice: "co-defendants do not suffer prejudice simply because one co-defendant's defense directly inculpates another, or it is logically impossible for a jury to believe both co-defendants' defenses."  Blankenship, 382 F.3d at 1125.  Moreover -- as in this case -- the defendants in Blankenship failed to show either that the joint trial resulted in a violation of a substantive trial-related right or that the joint trial undermined the credibility of the jury's verdict.  See id. at 1125-26.

6

Blanc has failed to demonstrate sufficiently either that he suffered prejudice as a result of the joint trial or that severance was the only proper remedy.  The district court abused no discretion in denying Blanc's motion to sever.

III.

Blanc next challenges the district court's refusal to dismiss the entire panel of prospective jurors based on comments made during voir dire by one prospective juror.  In particular, Juror 4 -- a retired corrections officer -- commented that the defendants looked familiar to him.

We review for manifest abuse of discretion the district court's decision about whether to strike a jury panel.  United States v. Trujillo, 146 F.3d 838, 842 (11th Cir. 1998).  Because evaluating a juror's bias requires an assessment of the juror's credibility and demeanor, we generally defer to the trial court's determination on this issue.  United States v. Simmons, 961 F.2d 183, 184 (11th Cir. 1992).

To prevail on appeal, Blanc must show that Juror 4 exhibited "actual bias." See Trujillo, 146 F.3d at 842.  In other words, Blanc must demonstrate "either an express admission of bias, or proof of specific facts showing such a close connection to the circumstances of the case that bias must be presumed."  See id. at 842-43.

7

After Juror 4 commented that the defendants looked familiar and that the last name "La Blanc" sounded familiar to him, Juror 4 said that he knew nothing about the defendants. Juror 4 also said that he believed he could be a fair juror. Then -- outside the presence of the venire -- the district court and the lawyers questioned Juror 4 further. During questioning, Juror 4 said that his past as a corrections officer would not affect his ability to judge the evidence, that he was certain he did not recognize the defendants from his work as a corrections officer, and that he thought he could be a fair and impartial juror.

Both defendants challenged Juror 4 for cause, which was denied.[2] Both defendants also moved for a mistrial, or to strike the venire, on the ground that Juror 4's comments in front of the venire made it sound as if Juror 4 knew the defendants from his work in the prison system. The court denied the motion. The court did, however, issue a curative instruction, informing the venire panel that, to the extent Juror 4 thought he might recognize defendants, it was unrelated to his former employment. Defendants then used a peremptory strike to strike Juror 4.

In the light of Juror 4's responses to questioning, Juror 4's insistence that he could be a fair and impartial juror, and the district court's curative instruction, Blanc has shown no actual bias. The district court abused no discretion in failing

---

[2] Blanc raises no challenge to the district court's refusal to strike Juror 4 for cause; that issue is thus abandoned. See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).

8

to strike the entire jury panel or to grant a mistrial.

AFFIRMED.